UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal No. 07-320 (PLF) |
| v. : | |
| : | |
| **RENEE HEARD** : | |
| : | |
| **Defendant,** : | |

## STATEMENT OF THE OFFENSE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, and defendant, Renee Heard, hereby submit this Statement of the Offense. The essential elements of the offense of False Statement or Fraud to Obtain Federal Employees' Compensation, in violation of 18 U.S.C. § 1920, each of which the Government must prove beyond a reasonable doubt, are:

1.  That defendant knowingly and willfully made a false or fictitious statement or representation, or made or used a false or fictitious statement or report knowing the same to contain any false or fictitious statement or entry;

2.  That the false or fictitious statement or representation made or used by the defendant was material;

3.  That the false or fictitious statement or representation was made or used in connection with the application for or receipt of compensation or other benefit or payment of workers' compensation, under subchapter I or III of chapter 81 of title 5 of the United States Code.

The United States Department of Labor ("DOL") administers a workers' compensation program to protect federal employees who are injured while performing duties within the scope of their federal employment. The Department of Labor's workers' compensation program is

administered by its Office of Workers' Compensation Programs (hereinafter "OWCP"). Federal employees who are injured while working are required to complete a "Notice of Traumatic Injury", or a "Form CA-1" which is filled out and is signed by the applicant.

The defendant RENEE HEARD was formerly employed by the Federal Emergency Management Agency as a computer specialist. On or about November 3, 1994, defendant was injured on the job. As a result, on or about July 22, 1996, she filed a Form CA-1, indicating that factors concerning her employment caused her to suffer from Carpal Tunnel Syndrome. Her claim was accepted and, consequently, she began receiving workers' compensation benefits.

On or about October 2, 2000, defendant RENEE HEARD received notification from the OWCP of a termination of benefits. On December 29, 2000, defendant's benefits were officially terminated. Defendant RENEE HEARD appealed that decision and, by letter dated March 31, 2001, the defendant was notified by OWCP that her appeal was denied and that the decision to terminate her benefits would stand.

On or about November 26, 2002, defendant RENEE HEARD made another appeal and the case was remanded back to OWCP for review. Because OWCP was unable to reconstruct the defendant's file for proper review, they reinstated defendant's benefits, with retroactive pay from December 29, 2000, through June 14, 2003, of $58,095.49.

By letter dated June 24, 2003, OWCP directed defendant RENEE HEARD to file a "Claim for Compensation On Account of Traumatic Injury or Traumatic Disease", or a "Form CA-7" (hereinafter, "CA-7"). On or about July 1, 2003, defendant submitted the CA-7, as required. Therein, she was asked, on Question 4, to state the time period of loss wages for which she was

claiming compensation. In response, defendant wrote the time period of December 29, 2000, until July 1, 2003 (the date she signed the form).

Further, on Question 6, defendant RENEE HEARD was asked the following: "Has any pay been received for [the] period shown in [question number] 4?" In response, defendant indicated that she had not received any pay during this period. However, in fact, from in or about January 2002, through on or about June 27, 2004, defendant was employed by the government of the District of Columbia, as a staff assistant in the Department of Parks and Recreation. From her District of Columbia employment, she received a total gross income of $71,706.31. Meanwhile, during this same time frame, defendant received workers' compensation from OCWP, based on total disability, in the amount of $63,846.84.

From about February 20, 2006, through May 14, 2006, defendant RENEE HEARD was employed as a staff assistant for the District of Columbia Department of Health. Despite the fact that she was employed by the District, she continued to receive federal workers' compensation benefits based on total disability. Defendant's gross income from her employment during this period was $11,057.32. During the same time frame, however, defendant's workers' compensation, based upon total disability, was $7,357.50.

In applying for her position at the District of Columbia Department of Health, defendant RENEE HEARD submitted a District of Columbia government job application, on or about November 7, 2005. In the application, she is asked, in Section 10, Question C: "Do you receive or have you ever applied for retirement pay, pension, or other pay based on District of Columbia government or federal civilian or military service?" In response, defendant RENEE HEARD falsely checked the box marked "NO," and signed the application at the bottom.

On August 24, 2006, agents of the District of Columbia Office of the Inspector General and U.S. Department of Labor Office of the Inspector General interviewed defendant RENEE HEARD. During the interview, defendant admitted that she had in fact received employment wages from the District of Columbia government, while at the same time she unlawfully received workers' compensation benefits based upon total disability from approximately January 2002 to June 2004, and from February 2006 to May 2006.

Further, defendant RENEE HEARD admitted that she knowingly and intentionally provided a false answer to Question 6 in the CA-7 dated July 1, 2003, for the purpose of receiving workers' compensation benefits, and that she knowingly and intentionally provided a false response to Section 10, Question C of her November 7, 2005, employment application to the District of Columbia government.

Because OWCP paid defendant RENEE HEARD $63,846.84 in compensation based on total disability from in or about January 2002, through on or about June 27, 2004, and defendant received gross wages from her employment with the District of Columbia Department of Parks and Recreation totaling $71,706.31 during that same period, OWCP calculated that the excess compensation she received from OWCP was **$42,030.58**. Further, because OWCP paid defendant $7,357.50 in compensation for total disability from on or about February 20, 2006, through on or about May 14, 2006, and she received gross income of $11,057.32 from her employment with the Department of Health, OWCP calculated that the excess compensation to defendant for this period was **$5,772.54**. In sum, OWCP has determined that the total actual loss to OWCP for both periods described above and for which defendant is responsible to OWCP as restitution is **$47,803.12**.

This Statement of the Offense is a summary of defendant Renee Heard's participation in the offense of False Statement or Fraud to Obtain Federal Employees' Compensation, in violation of 18 U.S.C. § 1920, and is not intended to be a complete accounting of all facts and events related to this offense. The limited purpose of this Statement of the Offense is to demonstrate that a factual basis exists to support defendant Renee Heard's guilty plea in this case.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____
Debra L. Long-Doyle
Assistant United States Attorney
D.C. Bar No. 362518
U.S. Attorney's Office
555 4th Street, N.W., Rm. 4828
Washington, D.C. 20530
(202) 305-0634
Debra.Long-Doyle@USDOJ.Gov

## **DEFENDANT'S ACKNOWLEDGMENT**

I have read the above <u>five-page</u> factual proffer and have discussed it with my attorney, Robert Bonsib, Esq. I fully understand this factual proffer. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.


Date:_____              _____
                                     Renee Heard
                                     Defendant



## **ATTORNEY'S ACKNOWLEDGMENT**

I have read this factual proffer, and have reviewed it with my client fully. I concur in my client's desire to adopt this factual proffer as true and accurate.


Date: _____             _____
                                     Robert Bonsib, Esq.
                                     Attorney for Defendant

U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center
555 Fourth St., N.W.
Washington, D.C. 20530*

November 14, 2007

VIA FACSIMILE TRANSMISSION

Robert Bonsib, Esq.
6411 Ivy Lane
Site 116
Greenbelt, MD 20770

                **Re:**    **Renee Heard**

Dear Mr. Bonsib:

      This letter sets forth the final plea offer to your client, Renee Heard, from the Criminal Division of the Office of the United States Attorney for the District of Columbia (hereinafter also referred to as "the Government" or "this Office"). Per your voicemail on October, 22, 2007, you indicated that your client accepts the terms and conditions of this offer, and that you will have her execute this document in the space provided below prior to the entry of her plea. Upon receipt of the executed document, this letter will become the Plea Agreement. The terms of the offer are as follows:

      **Charges and Statutory Penalties**

      1.    Your client agrees to plead guilty to a criminal Information, charging one count of false statement or fraud to obtain federal employees' compensation, in violation of 18 U.S.C. § 1920.

      2.    Your client understands that a charge of false statement or fraud to obtain federal employees' compensation under 18 U.S.C. § 1920 carries a maximum sentence of five (5) years of imprisonment, a fine of $250,000, or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C., Section 3571(d), a $100 special assessment, a three-year term of supervised release, an order of restitution, and an obligation pay any applicable interest or penalties on fines or restitution not timely made. Your client further agrees to pay the $100 special assessment prior to her sentencing.

      3.    In consideration of your client's plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of the Offense.

**Factual Stipulations**

4.  Your client agrees that the attached Statement of the Offense fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty. It is anticipated that prior to or during the plea hearing, your client will adopt and sign the Statement of the Offense as a written proffer of evidence.

**Sentencing Guidelines Stipulations**

5.  Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C., Section 3553(a), including a consideration of the guidelines and policies promulgated by the United States Sentencing Commission, <u>Guidelines Manuel</u> [November 1, 2005] (hereinafter "Sentencing Guidelines" or "U.S.S.G."). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties agree and stipulate to the following:

    **A.   Offense Level under the Guidelines**

6.  Section 2B1.1

| | |
|---|---|
| Base Offense Level | 6 |
| Loss greater than $30,000 but less than $70,000 | 6 |
| Total Offense Level | 12 |

    **B.   Acceptance of Responsibility:  2-point reduction**

7.  Provided that your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution and subsequent conduct prior to the imposition of sentence, the Government agrees that a 2-level reduction would be appropriate, pursuant to U.S.S.G., Section 3E1.1(a).

8.  In accordance with the above, the applicable adjusted Guidelines Offense Level is 10.

    **C.   Criminal History Category**

9   Based upon the information now available to this Office (including representations by the defense), it appears that your client does not have a prior criminal history. Accordingly, your client's Criminal History Category is I.

### D. Applicable Guideline Range

10. Based upon the calculations set forth above, your client's stipulated Sentencing Guidelines range is Zone B and provides for a range of incarceration of between 6 to 12 months (the "Stipulated Guidelines Range"). In addition, the parties agree that under the Sentencing Guidelines, neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein, nor will either party suggest that the Court consider such a departure or adjustment. Further, the Government agrees that it will not oppose the imposition of probation in this case.

### Agreement as to Sentencing Allocution

11. The parties further agree that a sentence within the Stipulated Guidelines Range, excluding incarceration, would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a). In addition, neither party will seek a sentence outside of the Stipulated Guidelines Range or suggest that the Court consider a sentence outside of the Stipulated Guidelines Range.

12. Nothing in this Agreement limits the right of the parties to make any arguments regarding where within the Guidelines Range your client should be sentenced or to seek an appropriate adjusted sentencing range if it is determined based upon new information that your client's criminal history category is different from that set forth above. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G., Section 3E1.1, and/or imposition of an adjustment for obstruction of justice, *see* U.S.S.G., Section 3C1.1, regardless of any stipulation set forth above, should your client move to withdraw your client's guilty plea after it is entered, or should it be determined that your client has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) engaged in additional criminal conduct after signing this Agreement.

### Court Not Bound by the Plea Agreement

13. It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the above stipulations, either as to questions of fact or as to the parties' determination of the applicable Guidelines range, or other sentencing issues. In the event that the Court considers any Guidelines adjustments, departures, or calculations different from any stipulations contained in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in Title 18, United States Code, Section 3553(a), the parties reserve the right to answer any related inquiries from the Court.

### Court Not Bound by the Non-Mandatory Sentencing Guidelines

14.     It is understood that the sentence to be imposed upon your client is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court. Your client acknowledges that your client's entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range. The Government cannot, and does not, make any promise or representation as to what sentence your client will receive. Your client understands and agrees that your client will not be allowed to move to withdraw the guilty plea entered under this agreement solely because of the harshness of the sentence imposed. Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence outside the Guidelines range.

### Restitution

15.     In addition to the other penalties provided by law, the Court must also order that your client make restitution under 18 U.S.C., Section 3663A. Restitution is payable immediately unless ordered otherwise by the Court.

### Appeal Waiver

16.     It is agreed (i) that your client will not file a direct appeal of any sentence within or below the Stipulated Guidelines Range set forth above and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. It is further agreed that any sentence within the Stipulated Guidelines Range is reasonable. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.

### Release/Detention

17.     Your client acknowledges that while the Government will not seek a change in your client's release conditions pending sentencing, the final decision regarding your client's bond status or detention will be made by the Court at the time of your client's plea of guilty. Should your client engage in further criminal conduct prior to sentencing, however, the Government may move to change your client's conditions of release.

### Breach of Agreement

18.     Your client understands and agrees that if, after entering this Plea Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Plea Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Plea Agreement. In the event of such a breach: (a) the Government will be free from its obligations under the Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client shall be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use

against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of this Agreement, including your client's statements made during proceedings before the Court pursuant to Fed. R. Crim. P. 11.

19.     Your client acknowledges discussing with you Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410, rules which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. Your client knowingly and voluntarily waives the rights which arise under these rules.

20.     Your client understands and agrees that the Government shall only be required to prove a breach of this Plea Agreement by a preponderance of the evidence. Your client further understands and agrees that the Government need only prove a violation of federal, state, or local criminal law by probable cause in order to establish a breach of this Plea Agreement.

21.     Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement. Your client understands and agrees that the Government reserves the right to prosecute your client for any such offenses. Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's obligations under this Agreement shall constitute a breach of this Agreement. However, in the event of such a breach, your client will not be allowed to withdraw this guilty plea.

**Waiver of Statute of Limitations**

22.     It is further agreed that should the convictions following your client's pleas of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

**Waiver of Right to DNA Testing**

23.     By entering this plea of guilty, your client waives any and all right your client may have, pursuant to 18 U.S.C., Section 3600, to require DNA testing of any physical evidence in the possession of the Government. Your client fully understands that, as a result of this waiver, any

physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

**Complete Agreement**

24.     No other agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia.

25.     Your client further understands that this Agreement is binding only upon the United States Attorney's Office for the District of Columbia. This Agreement does not bind the Civil Division of this Office or any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor.  It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against your client.

26.     If the foregoing terms and conditions are satisfactory, your client may so indicate by signing the Agreement in the space indicated below and returning the original to me once it has been signed by your client and by you or other defense counsel.

Sincerely yours,

_____
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:    _____
Debra L. Long-Doyle
Assistant United States Attorney
D.C. Bar No. 362-518
U.S. Attorney's Office
555 4th Street, N.W., Rm. 4235
Washington, D.C. 20530
(202) 305-1419
Debra.Long-Doyle@USDOJ.Gov

## DEFENDANT'S ACCEPTANCE

I have read all <u>6</u> pages of this plea agreement and have discussed it with my attorney, Robert Bonsib, Esquire. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in paragraph one.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Date:_____        _____
                                     Renee Heard
                                     Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the <u>6</u> pages constituting this plea agreement, reviewed them with my client, and discussed the provisions of the agreement with my client, fully. These pages accurately and completely sets forth the entire plea agreement. I concur in my client's desire to plead guilty as set forth in this agreement.

Date: _____        _____
                                     Robert Bonsib, Esquire
                                     Attorney for the Defendant